**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANNA JONES, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:19-cv-00600-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Pending before the Court is the Motion to Dismiss, or Alternatively, Motion for Summary Judgment, (ECF No. 26), filed by Defendant United States of America ("United States"). Plaintiff Anna Jones ("Plaintiff") filed a Response, (ECF No. 39), and the United States filed a Reply, (ECF No. 43).

Also pending before the Court is the Motion in Limine, (ECF No. 25), filed by Defendant thyssenkrupp Elevator Corporation ("TKE"); the United States filed a joinder, (ECF No. 33). Plaintiff filed a Response, (ECF No. 36), and TKE filed a Reply, (ECF No. 38).

Also pending before the Court is TKE's Motion for Summary Judgment, (ECF No. 29). Plaintiff filed a Response, (ECF No. 40), and TKE filed a Reply, (ECF No. 42).

Also Pending before the Court is Plaintiff's Motion for Partial Summary Judgment, (ECF No. 31), against Defendant United States. The United States filed a Response, (ECF No. 37), and Plaintiff filed a Reply, (ECF No. 44).

For the reasons discussed below, the Court **GRANTS** the United States' Motion to Dismiss, **GRANTS in part and DENIES in part** TKE's Motion in Limine, **DENIES** TKE's

Motion for Summary Judgment, and **DENIES as moot** Plaintiff's Motion for Partial Summary Judgment.

## I. BACKGROUND

This case arises out of an injury Plaintiff sustained while exiting an elevator at the VA Southern Nevada Healthcare System ("VA hospital"), which is operated by the United States Department of Veterans Affairs. (Compl. ¶¶ 7, 22–28, ECF No. 1). On December 19, 2017, Plaintiff was riding in an elevator with her husband, other family members, and at least one VA employee. (*Id.* ¶ 26). As Plaintiff exited the elevator, the door began to shut and struck Plaintiff, causing her to fall to the ground and fracture her hip. (*Id.* ¶ 28). At this time, TKE was responsible for selling servicing, and maintaining the elevator. (*Id.* ¶ 24).

According to Plaintiff, the United States and TKE failed to maintain the elevator and implement adequate safety precautions, creating a dangerous condition on the VA hospital premises. (*Id.* ¶ 32). Based on these failures, Plaintiff filed her Complaint with this Court, alleging negligence against both the United States and TKE, as well as premises liability against the United States alone. (*Id.* ¶¶ 29–48).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") permits motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L.Ed.2d 391 (1994).

1    A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the sufficiency of the allegations supporting subject-matter jurisdiction. *Id.* When addressing a facial attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack, a court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment. *Id.*; *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The court need not presume the truthfulness of the plaintiff's allegations. *Id.*

Once the defendant has "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court," the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject-matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). If a court determines that it lacks subject-matter jurisdiction, then its authority is limited to making that finding and dismissing the claims. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

**B.  Motion in Limine**

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L.Ed.2d 443 (1984) (citing FRE 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L.Ed.2d 826 (2000); *see also Luce*, 469 U.S. at 41, 105 S. Ct. 460. Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

### C. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral*

*Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

1  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
2  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*
3  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on
4  denials in the pleadings but must produce specific evidence, through affidavits or admissible
5  discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,
6  1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical
7  doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)
8  (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the
9  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the
10 nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations
11 that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
12 Instead, the opposition must go beyond the assertions and allegations of the pleadings and set
13 forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*
14 *Celotex Corp.*, 477 U.S. at 324.

15       At summary judgment, a court's function is not to weigh the evidence and determine the
16 truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
17 The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
18 in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is
19 not significantly probative, summary judgment may be granted. *See id.* at 249–50.

20 **III.    DISCUSSION**

21       **A. The United States' Motion to Dismiss, or Alternatively, Motion for Summary**
22           **Judgment**

23       The Complaint sets forth two sets of facts alleging potential liability for the United
24 States.  First, the Complaint claims that the elevator itself was a dangerous condition on the VA
25 hospital property and asserts causes of action for negligence and premises liability in relation to

the elevator's condition. (Compl. ¶¶ 32, 42).  Second, the Complaint states that the VA employee who was in the elevator with Plaintiff negligently failed to assist Plaintiff in safely exiting the elevator. (*Id.* ¶ 27); (Resp. to Mot. Dismiss ("MTD") 9:1–24, ECF No. 39).  The United States moves to dismiss Plaintiff's claims relating to the condition of the elevator for lack of jurisdiction under Rule 12(b)(1). (MTD 5:19–23, ECF No. 26).  The United States then moves for summary judgment with respect to the negligence of the VA employee. (*Id.* 5:24–25).  The Court will discuss each argument in turn.

### i. Motion to Dismiss based on the elevator's condition

Plaintiff asserts two causes of action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.§§ 1346(b), 2671–2680: (1) negligence; and (2) premises liability. (Compl. ¶¶ 29–48).  With regards to the negligence claim, Plaintiff alleges that the United States: (1) created conditions posing an unreasonable risk to those using the elevator; (2) failed to maintain the elevator; (3) failed to implement safety precautions in the event of conditions posing a risk of harm to those using the elevator; and (4) failed to safely install, maintain, service, set, monitor, and/or inspect the elevator. (*Id.* ¶ 32).  As to the premises liability claim, Plaintiff alleges that the United States failed to protect Plaintiff from a risk of unreasonable harm caused by the elevator's condition. (*Id.* ¶ 42).  The United States now moves to dismiss both claims, arguing that this Court lacks subject matter-jurisdiction, since the United States has not waived its sovereign immunity under the FTCA. (MTD 5:19–23).

Sovereign immunity insulates the Federal Government and its agencies from being sued, unless the Federal Government has waived its immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  "Under the FTCA's limited waiver of sovereign immunity, the United States is liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (emphasis omitted).  However, while the FTCA waiver includes liability incurred by officers

and employees of "any federal agency," it expressly excludes "any contractor with the United States." 28 U.S.C. § 2671. Under the FTCA, "[c]ourts are not free to abrogate the independent-contractor exemption for the negligent acts of contractors regardless of whether they think there is good reason to do so. *Autery*, 424 F.3d at 957 (internal quotations omitted).

"The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor." *Id.* at 956 (citing Hines v. U.S., 60 F.3d 1442, 1446 (9th Cir. 1995)). However, "[d]etailed regulations and inspections are not evidence of an employee relationship." *Id.* at 957. "There must be substantial supervision over the day-to-day operations of the contractor in order to designate that the individual was acting as a government employee." *Id.*

In its Motion to Dismiss, the United States explains that its contract with TKE provided for the full maintenance of the elevators and that the VA hospital's maintenance team did not supervise the day-to-day operations of TKE's elevator technicians. (*See* MTD 7:7–12); (TKE Contract, Ex. C-1 to MTD, ECF No. 26-6); (White Dep. 14:12–16:4, 20:22–23:17, Ex. C to MTD, ECF No. 26-5).[1] For these reasons, the United States claims that TKE is an independent contractor, and thus, the United States has not waived its sovereign immunity for negligence claims based on the condition of the elevator maintained by TKE. (*See* MTD 10:11–13).

In response, Plaintiff does not dispute that TKE is an independent contractor. (*See* Resp. to MTD 7:26–28, ECF No. 39). In fact, Plaintiff states that she does not seek to hold the United States liable "based on anything Thyssenkrupp Elevator did or did not do." (*Id.*). Instead, Plaintiff asserts that she has a direct claim for negligence against the United States, arising out of the conduct of VA employees "who were responsible for the oversight of TKE."

---

[1] Plaintiff claims that the United States failed to procedurally authenticate the exhibits referred to in its Motion to Dismiss. (Resp. to MTD 7:9–16, ECF No. 39). However, after a review of the exhibits, the Court is satisfied that the United States properly authenticated its documents. (*See* Reply to MTD 6:20–7:28, ECF No. 43).

(*Id.* 4:19–20; 8:24–28).  However, the Complaint does not allege a cause of action for the United States' negligent oversight or supervision of TKE; it merely alleges a direct claim for negligence based on the elevator's condition, asserting that the United States itself failed to maintain it. (Compl. ¶ 32).  Plaintiff cannot proceed with a new theory not raised in the Complaint, especially since discovery has closed,[2] and thus, the Court will not consider it as an argument in favor of denying the Motion to Dismiss. *See Patel v. City of Long Beach*, 564 Fed. Appx. 881, 882 (9th Cir. 2014) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("Allowing [the plaintiffs] to proceed with their [new] theory after the close of discovery would prejudice [defendant].")).  Accordingly, because there is no dispute that TKE is an independent contractor, the United States has not waived its sovereign immunity under the FTCA for Plaintiff's negligence claim.[3]

Similarly, the United States has not waived its sovereign immunity with respect to Plaintiff's premises liability claim, which asserts that the United States was negligent in protecting Plaintiff from the elevator's allegedly dangerous condition on the VA hospital premises. (Compl. ¶ 42).  In Nevada,[4] a business owner has a duty to keep the premises in a

---

[2] Discovery closed on July 27, 2020. (*See* Order, ECF No. 24).

[3] Even if the Court were to entertain Plaintiff's newly manufactured negligent oversight claim, the United States would still prevail under the discretionary-function exception, which retains sovereign immunity "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015).  To survive a motion to dismiss under the discretionary-function exception, a claim must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 325 (1991).  The Ninth Circuit has repeatedly found that decisions relating to training, hiring, and supervision "fall squarely within the discretionary function exception." *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000). Here, Plaintiff's would-be negligent oversight claims relate directly to the United States' supervision of TKE, and thus "fall squarely" within the discretionary-function exception. *Id.* at 1001. *See also Cabalce v. VSE Corp.*, 914 F.Supp.2d 1145, 1161–64 (D. Haw. 2012) (barring claims for failure to supervise independent contractors under the discretionary function exception).

[4] "Under the Federal Torts Claim Act, suits against the United States are governed by the substantive law of the place where the act or omission complained of occurs." *McMurray v. United States*, 918 F.2d 834, 836 (9th Cir. 1990).

reasonably safe condition for use. *See Sprague v. Lucky Stores*, 109 Nev. 247, 250 (1993) (citing *Asmussen v. New Golden Hotel, Co.*, 80 Nev. 260, 262 (1964)).  However, the United States can delegate this responsibility to an independent contractor, preserving its sovereign immunity, unless the government has a nondelegable duty to ensure that the contractor employs proper safety procedures because there is a "peculiar risk" at stake or the delegated work is "inherently dangerous." *See Edison v. United States*, 822 F.3d 510, 518 n.4 (9th Cir. 2016); *Rabieh v. United States*, No. 5:19-cv-00944-EJD, 2019 WL 5788673, at *5–6 (N.D. Ca. Nov. 6, 2019).

Here, Plaintiff does not claim that the United States had a nondelegable duty with respect to elevator safety and maintenance.  Absent allegations that the elevator presented some peculiar risk or inherent danger, the United States satisfied its obligation as a landowner to keep the premises reasonably safe simply by hiring an elevator company to operate and maintain its elevators. *See, e.g.*, *Rabieh*, 2019 WL 5788673, at *5–6 (citing *Edison*, 822 F.3d at 518 n.4) (dismissing a premises liability claim against the United States when the plaintiff failed to establish a nondelegable duty with respect to the independent contractor).  Because the United States delegated elevator maintenance to TKE, the independent contractor exception to the United States' waiver of sovereign immunity under the FTCA also applies to the premises liability claim.  Accordingly, since the United States has not waived its sovereign immunity, the Court dismisses, with prejudice, Plaintiff's negligence and premises liability claims based on the condition of the elevator.[5]

//

//

---

[5] Plaintiff cannot amend the defects in her Complaint by adding a negligent oversight claim, and even if she could, amendment at this point would be prejudicial. *See supra* n.3; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("Allowing [the plaintiffs] to proceed with their [new] theory after the close of discovery would prejudice [defendant].").

### ii. Motion for Summary Judgment based on VA employee negligence

The Complaint alleges one set of facts that fits within the FTCA's waiver of sovereign immunity, as the claim is against an actual VA employee, and thus, an employee of the United States government. *See Autery*, 424 F.3d at 956 ("Under the FTCA . . . the United States is liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."). Plaintiff alleges that the VA employee riding in the elevator with her was negligent because he failed to warn Plaintiff that the elevator door was closing or hold the door open. (Compl. ¶¶ 27–28); (Resp. to MTD 9:1–24). The United States now moves for summary judgment, arguing that the VA employee had no duty to assist Plaintiff in exiting the elevator. (MTD 10:16–12:8).

"Under the Federal Tort Claims Act, suits against the United States are governed by the substantive law of the place where the act or omission complained of occurs." *McMurray v. United States*, 918 F.2d 834, 836 (9th Cir. 1990). As such, the FTCA waives sovereign immunity for the negligence of an employee of the United States in the same manner and to the same extent as a private individual in a similar circumstance under Nevada law. *See Autery*, 424 F.3d at 956. To establish negligence under Nevada law, a plaintiff must prove four elements: (1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach caused the plaintiff's injury; and (4) that the plaintiff was damaged. *Joynt v. California Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992). "Whether a defendant owes plaintiff a duty of care is a question of law." *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996).

Here, Plaintiff alleges that the VA employee, as an employee of the United States, was negligent through a theory of premises liability.[6] Under a premises liability claim, a plaintiff

---

[6] While Plaintiff does not actually state that she is using a theory of premises liability, in arguing that the VA employee was negligent, she identifies the alleged duty at stake as that of an owner of real property, who has a duty of reasonable care with respect to risks that exist on the landowner's property. (*See* Resp. to MTD 9:14–15).

alleges that the employer is liable for its own negligence in failing to maintain its premises in a safe condition. *See Lee v. GNLV Corp.*, 22 P.3d 209, 212–14 (Nev. 2001) (explaining that a "a party who is in control of the premises is required to take reasonable affirmative steps to aid the party in peril.") (internal quotations omitted) (quoting *Sims v. Gen. Tel. & Elec.*, 815 P.2d 151, 157–58 (Nev. 1991)). The employer owes a duty of care to the plaintiff, but the employee, as the employer's agent, engages in the conduct that breaches the employer's duty. S*ee, e.g.*, *id.*, 22 P.3d 209, 212–14 (Nev. 2001) (discussing whether a restaurant's employees breached the employer-restaurant's duty of care by failing to perform the Heimlich maneuver on a choking patron);[7] *Basile v. Union Plaza Hotel & Casino*, 887 P.2d 273, 275 (Nev. 1994) (explaining that the security guards' failure to protect a woman from assault did not breach the casino proprietor's duty to keep its premises safe for its patrons). As a result, because the employee's conduct is attributed to the employer, the employee does not owe an independent duty of care to maintain a safe premises and is not liable for the employer's negligence in failing to do so. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 766 (7th Cir. 2009) ("where a tort is alleged directly against the principal for its own misconduct, we may not impute a duty the *principal* owed to a third party to an agent merely acting pursuant to duties, in turn, owed to the principal.") (emphasis original). Put differently, under Nevada law, only an owner or occupier of land owes the public a duty to secure the premises. *Lee*, 22 P.3d at 212–14. While the employee-agent may owe its employer-principal a duty to secure the premises, it owes no such legal duty to third parties. *See Schur*, 577 F.3d at 766.

---

As such, the Court assumes that Plaintiff is alleging negligence against the VA employee under a theory of premises liability.

[7] The Nevada Supreme Court stated, "GNLV's employees were under a legal duty to come to the aid of [patron]." *Id.* at 212. However, context makes clear that while the employees had a legal duty to GNLV, as its agents, to help the patron, they did not owe an independent legal duty to the patron. *See id* 212–14; *see also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 766 (7th Cir. 2009) ("where a tort is alleged directly against the principal for its own misconduct, we may not impute a duty the principal owed to a third party to an agent merely acting pursuant to duties, in turn, owed to the principal.").

Here, the United States asserts that Plaintiff has not met her burden to establish that the VA employee had a duty to press the elevator's "door open" button and assist her in exiting the elevator. (MTD 11:18–26). The Court agrees. While the United States certainly owed Plaintiff a duty of reasonable care with respect to risks that exist on its property, that duty does not extend to its individual employees; but even if it did, Plaintiff points to no standards or laws indicating that a landowner's general duty of reasonable care also extends to the more specific duty of assisting patrons in and out of elevators on the premises. *Cf. Ashcroft v. Clark County*, 930 P.2d 740, 742–43 (Nev. 1997) (finding that the "common law duty of reasonable care did not give rise to a specific duty" to keep every gate unlocked in a park). Moreover, requiring employees to hold open elevator doors for each person that enters the property likely places a burden on the employer that goes beyond what reasonable care requires. *See Lee*, 22 P.3d 213 (requiring every restaurant employee to be trained in the Heimlich maneuver is too burdensome to be required by the reasonable care standard).

In sum, Plaintiff has failed to establish that the VA employee owed her a duty of care, and therefore, she cannot sustain a negligence claim. Accordingly, the Court grants the United States' Motion for Summary Judgment with respect to Plaintiff's claims that the VA employee was negligent. Additionally, because Plaintiff has no surviving claims against the United States, the Court denies as moot Plaintiff's Motion for Partial Summary Judgment.

### B.  TKE's Motion in Limine

Because Plaintiff's negligence claim against TKE partly relies on the argument that the elevator's doors did not stay open long enough for Plaintiff to safely exit, Plaintiff has retained elevator expert Shawn Johnson to testify about the elevator door's "dwell time," which is the amount of time elevator doors remain open. (Resp. to Mot. Limine ("MIL") 4:4–14, ECF No. 36). Mr. Johnson is expected to testify that: (1) the dwell time on the elevator door was set below the code required three second minimum; and (2) the dwell time should actually have

been adjusted to at least five seconds because the elevator is located in a hospital. (Reply to MIL 2:6–7, ECF No. 38).  TKE moves to exclude Mr. Johnson's testimony, arguing that it is not based on scientific methodology, and is therefore unreliable. (MIL 2:19–22).[8]

Under Federal Rule of Evidence 702, an expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

The Court must ensure that specialized evidence is relevant and reliable. *Daubert*, 509 U.S. at 589.

> Faced with a proffer of expert scientific testimony ... the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93 (footnote omitted).  A judge has discretion under Rule 702 as a "gatekeeper to decide what evidence is relevant, reliable, and helpful the trier of fact." *Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998).  As gatekeepers, district court judges are to consider four nonexclusive factors to determine if the expert opinion is reliable and developed by the scientific method: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community."

---

[8] The Court notes that TKE does not directly challenge Mr. Johnson's qualifications to render expert opinions concerning elevator dwell time.  Based on Mr. Johnson's background in the elevator industry, as well as his training, experience, and education, the Court finds him to possess sufficient qualifications to proffer expert testimony here. (*See* Curriculum Vitae, Ex. 1 to Resp. to MIL, ECF No. 36-1); *see also* Fed. R. Evid. 702.

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998) (quoting *Daubert*, 509 U.S. at 594).

In cases involving technical analysis, rather than scientific evidence, the reliability inquiry should be "flexible," since oftentimes *Daubert*'s four factors may not apply. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). For example, "when evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus on personal knowledge or experience.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting *Kumho*, 526 U.S. at 150). Expert opinions are reliable when they have a "reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 645.

Here, Mr. Johnson bases his opinion that the elevator's dwell time was set below code on two factors: (1) the TKE elevator technician's testimony that when he adjusted the elevator's dwell time after the accident, he adjusted it up "from two seconds" and (2) the video of the accident; Mr. Johnson inspected the video and used a stopwatch to measure the dwell time, getting results between 2.9 and 3.5 seconds. (*See* Expert Report at 4, 14, Ex. 2 to Resp. to MIL, ECF No. 36-2); (Johnson Dep. 41:3–44:4, Ex. A to MIL, ECF No. 25). Mr. Johnson bases his opinion that, in a hospital, the dwell time should be set above code on his experience and training in the elevator field. (*See* Expert Report at 13, Ex. 2 to Resp. to MIL); (Johnson Dep. 55:8–56:14, Ex. A to MIL). TKE asserts that these opinions should be excluded because Mr. Johnson never inspected the actual elevator, cited no scientific studies, and failed to use a scientifically reliable method to measure dwell time recorded on video. (MIL 7:25–8:11).[9]

---

[9] The Court is unconcerned that Mr. Johnson never inspected the actual elevator in question because the elevator's settings were changed long before discovery in this case began. (Resp. to MIL 9:20–10:25, ECF No. 36). *See also Urena v. Schindler Elevator Corporation*, No. 3:15-cv-00223-JWS, 2019 WL 2905907, at *2 (D. Alaska Mar. 24, 2019) ("Plaintiff's argument that his testimony should be excluded because he physically inspected the elevator years after the incident goes to the weight of his testimony rather than its admissibility.").

1  The Court finds that, at this time, there is no reason to exclude Mr. Johnson's testimony
2  that the dwell time in hospital elevators should be set to five seconds, because he bases this
3  opinion on his knowledge of the industry custom to increase dwell time in buildings with more
4  vulnerable demographics. (Expert Report at 13, Ex. 2 to Resp. to MIL); (Johnson Dep. 55:8–
5  56:14, Ex. A to MIL). *See also Atherton Resources LLC v. Anson Resources Ltd.*, No. 3:17-cv-
6  00340-MMD-CLB, 2020 WL 4607306, at *2 (D. Nev. Aug. 11, 2020) (recognizing that expert
7  witnesses are permitted to testify about industry customs).  Accordingly, Mr. Johnson can
8  opine, that based on his expertise and training, a dwell time set above the code requirement is
9  reasonable in a hospital environment.

10  Similarly, Mr. Johnson may testify that based on his training and experience, as well as a
11  review of the evidence available, including the testimony of TKE's elevator technician, the
12  dwell time on the elevator was set below code level. *See* Fed. R. Evid. 703 ("An expert may
13  base an opinion on facts or data in the case that the expert has been made aware of or
14  personally observed); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th
15  Cir.1997) ("an expert's opinion may be based on data collected by others").  TKE argues that
16  Mr. Johnson's opinion is based on a misinterpretation of the available evidence. (Reply to MIL
17  2:16 –3:6, ECF No. 38).  However, any inconsistencies or weaknesses in Mr. Johnson's
18  opinion, as well as factual discrepancies between witnesses, are for the jury to weigh, not for
19  the court to decide. *Deatherage v. Schindler Elevator Corp.*, No. 3:16-cv-00206-MMD-VPC,
20  2018 WL 3212013, at *4 (D. Nev. June 29, 2018) (citing *Primiano v. Cook*, 598 F.3d 558, 564
21  (9th Cir.) *as amended* (Apr. 27, 2010)) ("Shaky but admissible evidence should not be excluded
22  but instead attacked by cross examination, contrary evidence, and attention to the burden of
23  proof.").  As such, TKE has not convinced the Court that this testimony is inadmissible "on all
24  potential grounds." *See, e.g.*, *Gen. Elec.*, 326 F. Supp. 2d at 846.

In contrast, Mr. Johnson may not opine as to his personal calculations regarding the elevator's dwell time. In his deposition testimony, Mr. Johnson states that he personally measured the dwell time using the video and a stopwatch, eliciting results that ranged from 2.9 to 3.5 seconds. (Johnson Dep. 59:6–21, Ex. A to MIL). As an initial matter, Mr. Johnson included neither his stopwatch measurements, nor any evidence of an exact measurement of the elevator's dwell time on December 19, 2017, in his expert report, and thus, testimony on these points must be excluded. Fed. R. Civ. P. 26(a)(2)(B); *Urena v. Schindler Elevator Corporation*, No. 3:15-cv-00223-JWS, 2019 WL 2905907, at *3 (D. Alaska Mar. 24, 2019) (excluding expert opinion that was not included in the expert report). Further, the Court is not convinced that Mr. Johnson's stopwatch method is a reliable scientific method under *Daubert*. In his expert report, Mr. Johnson criticizes TKE for failing to use industry tools to verify the timing of the door system. (Expert Report at 14, Ex. 2 to Resp. to MIL). Yet, Mr. Johnson neglects to explain the industry method to calculate dwell time and the tools used to do so. Without any information affirming Mr. Johnson's stopwatch usage, the Court cannot find his method or testimony concerning dwell time measurement to be reliable, especially considering that TKE's elevator technician testified that measuring dwell time with a stopwatch is not a standard work practice. (Tindall Dep. 89:15–19, Ex. B to Reply to MIL, ECF No. 38).

Plaintiff argues that a juror could determine the reliability of Mr. Johnson's testimony simply by watching the video and measuring the dwell time him-or-herself. (Resp. to MIL 11:8–22). However, the Court rejects this argument. If the jury can form their own opinion of dwell time simply by watching the video, and there is no other specialized knowledge that Mr. Johnson can add to bolster the jury's understanding, then there is no need for an expert to opine on the matter. *See* Fed. R. Evid. 702(a); *Daubert*, 509 U.S. at 589. Nonetheless, as determined above, Mr. Johnson can still give his expert opinion that: (1) the dwell time was set below the code requirement, as long as that opinion is not based on his own measurements of the

elevator's dwell time, and (2) the dwell time on hospital elevators should be set above code, to at least five seconds.

### C.  TKE's Motion for Summary Judgment

TKE's Motion is entirely predicated on the fact that Mr. Johnson's testimony should be excluded in its entirety. (Mot. Summ. J. ("MSJ") 2:12–14, ECF No. 29) ("In the event that Mr. Johnson is excluded, Plaintiff will not have any evidence to support her negligence cause of action against [TKE] and, as such, summary judgment should issue."). However, because Mr. Johnson's testimony has not been entirely excluded, Plaintiff can still proffer some evidence of TKE's negligence, and thus, the Court denies TKE's Motion for Summary Judgment.

## IV.  <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant United States' Motion to Dismiss, (ECF No. 26), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant TKE's Motion in Limine, (ECF No. 25), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant TKE's Motion for Summary Judgment, (ECF No. 29), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment against the United States, (ECF No. 31), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that within twenty-one days of the entry of this Order the parties shall file a Proposed Joint Pretrial Order.

**DATED** this __31__ day of March, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court